IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LUTHER T. RIDGE, JR.,** | : | |
| **Plaintiff** | : | **Case No. 13-CV-01577** |
| | : | |
| **v.** | : | |
| | : | |
| **THOMAS R. CAMPBELL,** | : | |
| **individually and in his official capacity;** | : | |
| **COREY L. BRITCHER, individually** | : | |
| **and in his official capacity; DAVID R.** | : | |
| **KELLER, individually and in his** | : | |
| **official capacity; and JAMES** | : | |
| **MULLER, individually and in his** | : | |
| **official capacity,** | : | |
| | : | |
| **Defendants** | : | **Judge Sylvia H. Rambo** |
| | : | |

# M E M O R A N D U M

In this section 1983 civil rights action, Plaintiff has sued a county sheriff for knowingly arresting him on a closed warrant in violation of, *inter alia*, his Fourth Amendment right to be free from unreasonable seizures.  Presently before the court is the sheriff's motion for summary judgment.  (Doc. 26.)  For the reasons that follow, the court will grant the motion in its entirety.

## I.        Background

### A.        Procedural History

Proceeding in this matter *pro se*, Plaintiff, Luther T. Ridge, commenced this action on June 12, 2013 by filing a complaint, naming as defendants two waterway conservation officers for the Pennsylvania Fish and Boat Commission, a Pennsylvania Court of Common Pleas judge, and James Muller ("Sheriff Muller"), the Sheriff of Adams County, Pennsylvania.  (Doc. 1, p. 1.)  All of the defendants

filed motions to dismiss, which the court granted by memorandum and order on October 25, 2013.  (Docs. 19 & 20.)  However, the court provided Plaintiff leave to file an amended complaint only with respect to his allegations against Sheriff Muller within fifteen days.  (*Id.*)  No such amended complaint was filed, and an order closing the case was entered on January 9, 2014.  (Doc. 22.)  On January 14, 2014, Plaintiff filed a motion for an extension of time to file an amended complaint, wherein he claimed that he had not received the court's October 25, 2013 order. (Doc. 23.)  The court reopened the case and granted Plaintiff an extension of time until January 31, 2014, to file an amended complaint.  (Doc. 24.)

Plaintiff filed his amended complaint against Sheriff Muller on January 31, 2014.  (Doc. 25.)   In the amended complaint, Plaintiff alleged violations of his First, Sixth, Eighth, and Fourteenth Amendment rights and Article 1 Section 9 of the Pennsylvania Constitution.[1]  A fair reading of the complaint also includes an alleged violation of Plaintiff's Fourth Amendment right to be free from unlawful seizures. On February 20, 2014, Sheriff Muller filed a motion to dismiss the amended complaint for failure to state a claim (Doc. 26) and a brief in support (Doc. 27).  On March 10, 2014, Plaintiff filed an opposition to the motion to dismiss (Doc. 28), and Sheriff Muller filed a reply brief on March 17, 2014 (Doc. 29).  On June 11, 2014, the court converted the motion to dismiss into one for summary judgment pursuant to Federal Rule of Civil Procedure 12(d) because the motion relied on matters outside the complaint in the nature of incident reports and sheriff's office procedures.  (Doc. 30.)  In compliance with the court's order, on July 30, 2014, Sheriff Muller filed a

---

[1]  Article 1 Section 9 of the Pennsylvania Constitution pertains to the rights of an accused in criminal prosecutions.  *See* P.A. Const. Art. 1, § 9.

statement of material facts and supplemental brief in support of the motion for summary judgment (converted from the motion to dismiss).  (Docs. 33 & 34.)

According to the June 11, 2014 order, Plaintiff was to file his response, if any, pursuant to applicable federal and local rules.  (Doc. 30.)  On August 11, 2014, Plaintiff filed a document titled, "Motion for Summary Judgment."  (Doc. 35.) The document is nearly identical to Plaintiff's response to Sheriff Muller's motion to dismiss (*compare* Doc. 28 *with* Doc. 35), and fails to comply with Local Rule 56.1, *see* M.D. Pa. 56.1.  Significantly, the document reads as a brief in opposition rather than as a brief for summary judgment.  Accordingly, the court will treat it as an opposition to Sheriff Muller's motion for summary judgment.[2]

Recognizing the likelihood that the court would treat the document as an opposition to the motion for summary judgment, Sheriff Muller filed a reply brief on August 22, 2014.  (Doc. 36.)  Thus, this matter has been fully briefed and is ripe for disposition.

## B.   Factual History

The following facts are undisputed or, where disputed, reflect Plaintiff's version of facts in the record, pursuant to this court's duty to view all facts and reasonable inferences in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).

---

[2]  Although the document – being treated as an opposition – nevertheless fails to comply with Local Rule 56.1 insofar as it does not "include a separate, short and concise statement of the material facts," in adherence to the leniency typically afforded to *pro se* litigants, *see Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), the court will consider the document to be in compliance with the local rules because it includes Plaintiff's recitation of the undisputed facts of the case (*see* Doc. 35, p. 3 of 21) and supporting documents.

As a method to expedite the warrant service process, the Adams County Sheriff's Office ("ACSO"), located within the Middle District of Pennsylvania, utilizes a "Sign and Release Process," whereby an individual who has been issued a warrant for failing to appear in court may contact the ACSO and complete a "Temporary Release From Bench Warrant Detainer" form ("Release Form") to guarantee his appearance in court at a later date. (*See* Doc. 33-7, pp. 3-4 of 4.) By signing the Release Form, the individual acknowledges his understanding that, "pursuant to authority granted by the Court of Common Pleas of Adams County[,] the Sheriff is hereby releasing [him] from custody with specific directions to appear on [a specified date] at [a specified time] in the Sheriff's Office and to answer for his failure to appear." (Doc. 33-7, p. 4 of 4.)

On February 19, 2013, a bench warrant was issued for Plaintiff's arrest due to his failure to appear on February 12, 2013 for a *Gagnon I* hearing at the Adams County Courthouse. On February 23, 2013, after receiving notice of the warrant, Plaintiff reported to the ACSO and completed a Release Form, which directed him to appear at the Adams County Courthouse on February 28, 2013, for a hearing on the bench warrant. (*See* Doc. 33, ¶¶ 3-4; Doc. 25, p. 2.) Upon completing the form, Plaintiff was assured by the ACSO that no further action would be taken pursuant to the warrant. (Doc. 25, p. 2.) On February 26, 2013, an entry was placed on the docket of the underlying criminal case indicating that the bench warrant for failure to appear had been "Returned Served-Closed." (Doc. 25, p. 5 of 5.)

On February 28, 2013, Plaintiff appeared at the Adams County Courthouse for his scheduled hearing. He attempted to enter the Courthouse at

approximately 7:37 a.m., but was denied access because the courthouse did not open to the public until 8 a.m.  (Doc. 33-3, p. 4 of 5; *see* Doc. 25, p. 2; Doc. 35, p. 2 of 21.)  Plaintiff was instructed to depart the building and wait outside.[3]  (Doc. 33, p. 4 of 5; Doc. 35, p. 2 of 21.)  As Plaintiff sat in his vehicle, several uniformed sheriff's deputies approached, told him they had a warrant for his arrest, and placed him in handcuffs.  (Doc. 25, p. 2; Doc. 35, p. 3 of 21.)  Plaintiff was then taken to a holding cell, where Sheriff Muller attended to a cut on Plaintiff's wrist from the handcuffs and explained that ACSO policy permitted officers to make arrests pursuant to "inactive" bench warrants at any point prior to the bench warrant hearing.[4]  (Doc. 25, p. 2.)

## II.       Legal Standard

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[3]  According to a security officer on duty at the time, Plaintiff became belligerent and yelled an expletive at the officer.  (*Id.*)  Plaintiff disputes this characterization of his actions, but admits he stated to the officer, in a low voice, "your [sic] being a dick."  (Doc. 35, p. 2 of 21.)  Thereafter, the director of security contacted the ACSO to advise it of the situation out of concern that Plaintiff may be hostile upon his return to the courthouse.  (Doc. 33-3, p. 4 of 5; Doc. 33-4, p. 4 of 5.)

[4]  Sergeant Kirkner's and Deputy Garcia's recitation of events varies considerably from the version recounted by Plaintiff.  Sergeant Kirkner and Deputy Garcia recounted in their incident reports that, at the request of the director of security, they responded to Plaintiff's vehicle, which was parked in front of the courthouse.  (Doc. 33-4, p. 4 of 5; Doc. 33-5, p. 4 of 5.)  They observed a live cartridge round in his vehicle.  (*Id.*)  Plaintiff immediately became belligerent with the officers, and Sergeant Kirkner informed Plaintiff that if he continued to be belligerent, he would be taken into custody pursuant to the bench warrant. (Doc. 33-5, p. 4 of 5.)  Sergeant Kirkner explained to Plaintiff that, although he completed a Release Form, the bench warrant remained valid until he went before the judge. (*Id.*)  Because he continued to be belligerent, Sergeant Kirkner and Deputy Garcia instructed Plaintiff to exit his vehicle and took him to a holding cell pending his hearing on the bench warrant.  (Doc. 33-4, p. 4 of 5; Doc. 33-5, p. 4 of 5.)

judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party is only entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which he has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

If the moving party has demonstrated an absence of material fact, the nonmoving party then must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  In considering a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmovant.  *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).  The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue.  *Davis v. National R.R. Passenger Corp.*, 733 F. Supp. 2d 474, 485 (D. Del. 2010) (citing *Anderson*, 477 U.S. at 249).

**III.**          **Discussion**

As Plaintiff brings his claims pursuant to Section 1983, the court will briefly address the law as it pertains to that statute.  Section 1983 of Title 42 of the

United States Code offers private citizens a means to redress violations of federal law committed by state officials.  *See* 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.*  "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)).  To establish a claim under this section, a plaintiff must demonstrate that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Construed broadly, Plaintiff's amended complaint alleges that Sheriff Muller violated his Fourth Amendment right to be free from unreasonable seizures, including his right to be free from false arrest and false imprisonment.[5]  An arresting

---

[5] Plaintiff erroneously included violations of his First, Sixth, and Eighth Amendment rights in his allegations and omitted an alleged violation of his Fourth Amendment right to be free from unlawful seizures.  Because the court looks at substance over title, the court construes Plaintiff's claim as one for unlawful seizure in violation of the Fourth Amendment.  Because even a liberal reading of Plaintiff's claims does not lend itself to establish a violation of First, Sixth, Eighth, or Fourteenth Amendment rights, the court will refrain from addressing these claims further and will summarily grant

(continued...)

officer violates a person's Fourth Amendment rights when the officer arrests a person without probable cause.  *See Hanks v. County of Delaware*, 518 F. Supp. 2d 642, 648 (E.D. Pa. 2007) (citing *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)); *see also Pierson v. Ray*, 386 U.S. 547, 556-57 (1967) (acknowledging that a plaintiff may recover civil damages for false arrest under Section 1983 if the plaintiff is able to establish the arresting officers lacked good faith and probable cause).  When an officer does make an arrest without probable cause, the arrestee may also assert a Section 1983 false imprisonment claim based on any subsequent detention resulting from that arrest.  *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995).

        The gravamen of the instant case is whether the arresting officers, allegedly acting under the direction of Sheriff Muller, acted pursuant to a facially valid warrant.  Generally, probable cause for arrest exists when a defendant is named in a facially valid bench warrant, and any Fourth Amendment argument arising out of the arrest is without merit even if the bench warrant later turns out to be invalid.  *Perez v. Gamez*, Civ. No. 1:13-cv-1552, 2013 WL 6182038, *5 (M.D. Pa. Nov. 25, 2013) (citing *United States v. Smith*, 468 F.2d 381 (3d Cir. 1972); *United States v. Spencer*, 684 F.2d 220, 223 (2d Cir. 1982); *Carter v. Baltimore Cnty.*, 95 F. App'x 471, 479 (4th Cir. 2004)).  Plaintiff argues that the bench warrant was not facially valid at the time of his arrest because, upon turning himself in to the ACSO, the

---

(...continued)
judgment on these claims in favor of Sheriff Muller.  In addition, because there is no private cause of action available for seeking monetary damages for a violation of the Pennsylvania constitution, the court will also grant judgment in favor of Sheriff Muller on Plaintiff's claim for a violation of Article 1 Section 9 of the Pennsylvania Constitution.  *See Bodnar v. Wagner*, Civ. No. 3:07-cv-2038, 2010 WL 56097, *7 (M.D. Pa. Jan. 5, 2010).

ACSO had "released [him] from custody" and provided him with "a new date for [his] *original* hearing."   (Doc. 35, p. 3 of 21 (emphasis added).)   Plaintiff further contends that, pursuant to Pennsylvania Rule of Criminal Procedure 150(A)(6), his signing of the Release Form vacated the warrant, as evidenced by the warrant being docketed as "Returned Served - Closed" on February 26, 2013.[6]  (*See id.*)

However, contrary to Plaintiff's assertions, the bench warrant was still valid at the time of his arrest.  Although the aforementioned docket annotation is somewhat misleading, in Pennsylvania, the issuance of a bench warrant necessitates a hearing before the judicial officer who issued the bench warrant or a designee of the president judge.  Pa. R. Crim. P. 150(A)(1).  It is only at the conclusion of the bench warrant hearing that the warrant is vacated by the judicial officer.  Pa. R. Crim. P. 150(A)(6).  Under Rule 150, a sheriff's office has no authority to cancel or vacate bench warrants.

While Plaintiff emphasizes that a comment to Pennsylvania Rule of Criminal Procedure 150 approves the practice of some judicial districts to permit the clerk of court to cancel the bench warrant upon receipt of a return of service in lieu of having the warrant vacated by a judicial officer at the conclusion of the bench warrant hearing, *see* Pa. R. Crim. P. 150, the procedure set forth by the ACSO's Sign and Release Process demonstrates that Adams County does not adhere to such a practice.  In accordance with its stated purpose "to expedite the warrant service process" (Doc. 33-7, p. 3 of 4), the ACSO's procedure provides that, upon being contacted by an individual with a warrant for a minor charge, the ACSO will

---

[6]  Plaintiff also cites to Pennsylvania Rule of Civil Procedure 1910.13-1, regarding bench warrants in support actions, and to Pennsylvania Rule of Juvenile Procedure 1140, regarding bench warrants in dependency matters.  Neither of these rules has any application or relevancy to this matter.

complete a Release Form and provide "the individual with the *outstanding warrant*" with a "Bench Warrant Hearing Date." (*Id.* at ¶ 5 (emphasis added).) "Upon disposition of the case, the Judge will vacate the original warrant." (*Id.* at ¶ 9.)

The undisputed facts of this case show that the ACSO adhered to its Sign and Release Process following the issuance of Plaintiff's bench warrant. After receiving notice of his warrant, Plaintiff appeared at the ACSO and signed a "*Temporary* Release From Bench Warrant Detainer" form,[7] which directed him to appear in court on February 28, 2013, for his failure to appear on February 12, 2013. Plaintiff appeared for the February 28, 2013 hearing as scheduled. Contrary to his assertion that the February 28, 2013 hearing was actually his rescheduled *Gangon I* hearing (*see* Doc. 35, p. 3 of 21), the hearing was undisputably a hearing on the bench warrant. Indeed, in an order entered at the conclusion of the proceeding, Judge Campbell stated, in relevant part:

> AND NOW, this 28th day of February, 2013, Defendant *appeared pursuant to a bench warrant issued when he failed to appear for a Gagnon I hearing.* Underlying violations include failure to report to the Probation Office.
>
> Revocation hearing in this matter is scheduled for March 28, 2013 at 8:30 a.m. in a courtroom to be designated that date.

(Doc. 33-1, p. 1 of 1 (emphasis added).) Thus, pursuant to Pennsylvania Rule of Procedure 150, a bench warrant hearing was held before a judicial officer, and it was only at the conclusion of the hearing that the warrant was vacated. Pa. R. Crim. P. 150(A)(1 & 6).

---

[7] For reasons unknown to the court, the Release Form signed by Plaintiff is not of record. However, Plaintiff does not dispute that he signed the form and was directed to appear in court on February 28, 2013.

Because Plaintiff's warrant was valid until such time that it was vacated by Judge Campbell following the bench warrant hearing, Plaintiff was lawfully arrested pursuant to a facially valid bench warrant. *See Perez*, 2013 WL 6182038 at *5. Accordingly, there was no violation of Plaintiff's right to be free from unlawful seizures. Because a supervisor cannot be held liable when there is no underlying constitutional violation, Plaintiff's claims against Sheriff Muller cannot succeed, and Sheriff Muller is entitled to judgment. *See Santiago v. Warminster Twp*., 629 F.3d 121, 129 (3d Cir. 2010) ("[A] supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.") (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).

**IV.**      **Conclusion**

In conclusion, Plaintiff was lawfully arrested pursuant to a facially valid bench warrant, and therefore, his constitutional rights were not violated. Accordingly, Sheriff Muller's motion for summary judgment will be granted in its entirety.

                                        s/Sylvia H. Rambo
                                        United States District Judge

Dated: November 5, 2014.